Thys Company *v.* Harvard Industries, Inc., Appellant.

Argued November 12, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Jack W. Plowman,* with him *Plowman and Spiegel,* for appellant.

*Alexander J. Jaffurs,* for appellee.

OPINION BY FLOOD, J., June 17, 1965:

In this action, brought by the appellees to enforce a California judgment, the appellant challenges the jurisdiction of the California court to enter the judgment.

Service of process in the original suit was made upon the Secretary of State of California, under §6501 of the California Corporation Code, upon an order of the California court which was based upon a finding, inter alia, that the appellant was a foreign corporation having done business in the state. This finding as to doing business, however, is not binding upon the courts of this state as a basis for jurisdiction of the California court over the appellant. *Thompson v. Whitman,* 85 U. S. 457 (1873); *Thorn Estate,* 353 Pa. 603, 46 A. 2d 258 (1946).

The court below took testimony and examined the question of jurisdiction, concluded that the California court had jurisdiction, and entered judgment against the appellant on the California judgment.

From the opinion it appears that the court en banc found and acted upon the following facts:

1. The appellant, Harvard Industries, Inc., has designated no agent for the service of process upon it in California, and after due diligence the plaintiff found no offices or agent of the defendant specified in §6500 of the Corporation Code of California for the service of process.

2. Harvard Industries, Inc. acquired all the capital stock of Rudolf Wendel, Inc., a California corporation, on June 22, 1959.

3. At the time of the purchase, Wendel was in weak financial condition and Harvard believed that if Wendel could acquire some equipment it might be rejuvenated, since it had some government contracts which the defendant thought could be turned into a profit.

4. After Harvard acquired all of the stock of Wendel (a) the president and treasurer of Harvard were elected to the same offices in Wendel, and new management was installed for Wendel; (b) Harvard made several advances to Wendel, totaling $80,000, during the period that defendant operated Wendel; and (c) Harvard also guaranteed bank loans made to Wendel.

5. The loans and guarantees made to and for Wendel by Harvard were made to assist Wendel to remain in operation.

6. After operating Wendel for a few months, the new manager decided the government contracts were not going to be profitable and were beyond the financial capacity of Wendel.

7. Wendel ceased doing business in November, 1959, and became bankrupt.

8. At the time Wendel ceased doing business, it owed Harvard approximately $392,000.

The conclusion of the California court that it would be unjust and inequitable not to hold the defendant liable for the indebtedness of Wendel to the plaintiff, is a decision on the substantive question of liability. We are consequently bound by it if the California court had jurisdiction. *Thorn Estate,* supra; *Higbee Estate,* 372 Pa. 233, 93 A. 2d 467 (1953).

The question remaining is whether the appellant had certain minimum contacts with California such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. This is the criterion for due process laid down by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U. S. 310 (1945). If by that standard the judgment is valid, we must accord it full faith and credit in Pennsylvania.

The rule of the *International Shoe* case is expressed in the general terms above quoted. In that case the Supreme Court found upon examination of all the factors relevant to the issue that it did not offend traditional notions of fair play and justice to require the foreign corporation to defend in the courts of Washington the claim of that state for unpaid unemployment compensation contributions. The opinion does not further discuss why such a conclusion is not offensive under the facts there existing. It merely sets out those facts and concludes that under such a set of facts it is within the requirements of due process to require the defendant to appear and be bound by the proceedings. The court examines not merely the amount, but the nature and quality of the activities of the defendant corporation in the forum state and their relation to the obligation sued upon.

In California the courts have followed the *International Shoe* case by considering in each case whether

there are such minimum contacts between the corporation to be sued and the State of California that the maintenance of the suit does not offend traditional notions of fair play and justice. In determining the sufficiency of the contacts the court asks whether they are so substantial that it is reasonable to require the corporation to defend the particular suit which is brought there. See, e.g., *Eclipse Fuel Engineering Co. v. Superior Court*, 307 P. 2d 739 (1957). "The only limitations upon the jurisdiction of the courts of an American state are to be found in the Constitution of the state, the Constitution of the United States and the same extensive powers possessed by the other states of the United States . . . . 'Doing business' within the meaning of Section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject foreign corporations to local process." *James R. Twiss, Ltd. v. Superior Court*, 30 Cal. Rptr. 98 (1963). California has adopted the constitutional standard as interpreted in the *International Shoe* case as its own, without further elaboration or refinement. "Whatever limitation [the phrase 'doing business in this state'] imposes is equivalent to that of the due process clause." *Twinco Sales Inc. v. Superior Court*, 40 Cal. Rptr. 833 (1964). The court has quashed service of summons on foreign corporations where no contacts can be established. Ibid.

If the facts found by the court below are accepted, the California court's conclusion that the defendant controlled substantially all of Wendel's activities and operations is justified. It is true that there was no evidence of any transactions between the companies other than the loans above-mentioned, nor of joint meetings of the boards, nor that Wendel was ever a selling agent for the defendant, or of the disregard of Wendel's corporate entity by Harvard. It is also true that the California court's conclusion that the new

manager, installed after Harvard acquired all of Wendel's stock, was an employe of Harvard, is not sustained by evidence in the record. The evidence, however, is sufficient to justify the conclusion that during at least part of the period after the plaintiff extended credit to Wendel, the latter operated only by virtue of loan capital furnished by the defendant, that its operations and activities during that time were controlled by the defendant and that Wendel was an instrumentality and conduit through which the defendant acted in California.

The chief thrust of the appellant's argument is that the evidence does not justify the findings of fact of the court below. However, the findings numbered two to eight above are in our opinion based upon competent evidence sufficient to justify them. It is true that the hearing judge in his adjudication seemed to rely heavily on the record of the proceedings of the California court. While the record of the California court raised a presumption of the validity even as to jurisdictional facts (*Commonwealth ex rel. McClenachan v. Reading,* 336 Pa. 165, 6 A. 2d 776 (1939) ), the appellant correctly points out that this presumption falls as soon as credible evidence is introduced to contradict it. *Waters v. New Amsterdam Casualty Co.,* 393 Pa. 247, 144 A. 2d 354 (1958). We therefore agree that if the court below had to rely upon this presumption and the facts found in the record of the California proceedings it would have been in error insofar as there was any credible contradictory evidence. However, the court did not need the presumption, nor did it need any of the evidence in the California record to which the appellant objects as hearsay in the Pennsylvania proceedings. In the Pennsylvania proceedings evidence was taken from the witness Robert P. Dunne which was sufficient basis for all of the findings made by the court below. (See record pages 107a to 117a, 121a,

478

122a.) Since the facts found by the court below to which we have referred were bottomed upon sufficient evidence given by the appellant's own witness in the Pennsylvania hearing, and since those facts are sufficient in our opinion to give the California court jurisdiction under its own rules as to when it will take jurisdiction,[1] and those rules afford the defendant due process under the *International Shoe Company* case, supra, we conclude that California had jurisdiction of the proceedings, that the judgment is valid under the due process clause of the United States Constitution, and that Pennsylvania must under the full faith and credit clause of the United States Constitution recognize and give effect to that judgment.

Judgment affirmed.

---

[1] The fact that Pennsylvania might not take jurisdiction in this type of case if the suit had been brought in the first instance in Pennsylvania under similar circumstances (*Rufo v. The Bastian-Blessing Co.*, 405 Pa. 12, 173 A. 2d 123 (1961)) is not controlling in the case here. The suit here is upon a judgment rendered in another state which has taken jurisdiction and given judgment under its own rules, which although more liberal than Pennsylvania rules for taking jurisdiction are nevertheless not violative of defendant's rights under the due process clause.