555 A.2d 1314

**Teann J. SCOGGINS, Appellant,**

v.

**Jimmy D. SCOGGINS, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1988.

Filed March 13, 1989.

508

Timothy E. Kane, York, for appellant.
Jeffrey D. Lobach, York, for appellee.

Before BECK, KELLY and HESTER, JJ.

KELLY, Judge:

In this opinion, we are called upon to determine whether an assertion of "marital domicile" by itself alleges sufficient minimum contacts, pursuant to the Pennsylvania Long–Arm Statute, to withstand a preliminary objection asserting the absence of *in personam* jurisdiction over a nonresident, nondomiciliary defendant in an action brought by a resident spouse concerning economic claims arising out of the marital relationship.

We find that although "marital domicile" may provide sufficient minimum contacts with Pennsylvania to permit exercise of *in personam* jurisdiction, the bare assertion of the legal conclusion that marital domicile existed in Pennsylvania without pleading further facts is not a sufficient factual predicate for the disposition of preliminary objections alleging the absence of personal jurisdiction over a nonresident, nondomiciliary defendant. The assertion of marital domicile is a conclusion of law which must be supported by specific facts. Moreover, while the fact of

former marital domicile within a forum is a highly relevant factor in determining whether long-arm jurisdiction is appropriate, it is not necessarily dispositive. For reasons which follow, we remand for further proceedings in the trial court upon the question of whether *in personam* jurisdiction could properly be exercised in this case.

## FACTS AND PROCEDURAL HISTORY

Teann J. Scoggins ("appellant") and Jimmy D. Scoggins ("appellee") were married in York, Pennsylvania, on February 12, 1983. The parties separated, and appellee moved to Florida, where he has since established his domicile. Appellant continues to reside in York, Pennsylvania. The scant record before us does not reveal when the parties separated or whether they ever lived together outside of Pennsylvania. We take judicial notice of the fact that Florida requires a six month residency period before a petition in divorce may be filed.[1] Therefore, we note that appellee must have resided in Florida by at least June 18, 1986, as he filed a petition for divorce in Florida on November 18, 1986. Appellant was served with a copy of that action on December 1, 1986.

On January 9, 1987, appellant instituted her own divorce action against appellee in Pennsylvania. In her complaint for divorce, appellant asserted claims for equitable distribution, alimony, alimony *pendente lite*, counsel fees, expenses, and costs. Appellee was served with notice of appellant's complaint.

■ Appellee obtained an *ex parte* divorce decree in Florida on January 14, 1987.[2] On February 4, 1987, appellee

1. West's F.S.A. § 61.021.
2. We note that neither party contests the validity of the Florida *ex parte* divorce. *See* Defendant's Preliminary Objections to Plaintiff's Complaint and Plaintiff's Answer to Defendant's Preliminary Objections. The Florida decree is accorded full faith and credit with regard to the marital status of the parties. *See Cheng v. Cheng,* 347 Pa.Super. 515, 524 n. 2, 500 A.2d 1175, 1180 n. 2 (1985). While holding that each party may retain possession over their personal property, the Florida decree is silent regarding any of the other economic aspects of

filed preliminary objections to appellant's divorce action alleging lack of subject matter jurisdiction, failure to state a cause of action upon which relief can be granted and lack of personal jurisdiction. The trial court refused to grant appellee's first two preliminary objections, based on its conclusion that appellant's complaint stated a cause of action for economic relief which could be resolved by a court in Pennsylvania. However, the trial court found that it could not exercise personal jurisdiction over appellee, a nonresident. The trial court explained that "the facts [of this case] may oblige the use of Pennsylvania law by a Court in deciding this case, but they *are not sufficiently clear* to allow this Court to fairly exercise personal due process jurisdiction over the ... [appellee]." (Trial Ct. Op. at 8). (Emphasis added). This timely appeal follows.[3]

Appellant raised the following issues for our consideration:

Whether the lower court erred in dismissing the action for lack of personal jurisdiction:

A. Does the situs of the marital domicile alone assure sufficient minimum contacts to satisfy the due process tests; and,

B. Did the lower court fail to follow established procedures by deciding the case on controverted facts alone and without taking additional evidence?

(Appellant's Brief at 3). Upon review of the parties' briefs, the record, the applicable statutory and constitutional authority and the relevant case law, we vacate the trial court's order and remand with instructions.

the divorce. Hence, our consideration of this action is concerned only with the economic issues. *See Cheng v. Cheng, supra,* 347 Pa.Superior Ct. 524 n. 2, 500 A.2d 1180 n. 2. Moreover, under the doctrine of divisible divorce, the Florida court had no jurisdiction over the economic issues in its *ex parte* proceeding. *See* J. Rounick, *Pennsylvania Matrimonial Practice,* at 608 (1988).

3. An order which dismisses a complaint for lack of personal jurisdiction is final and appealable. *Bergere v. Bergere,* 364 Pa.Super. 100, 527 A.2d 171 (1987); *Temtex Products, Inc. v. Kramer,* 330 Pa.Super. 183, 479 A.2d 500 (1984).

We shall address appellant's issues in the following manner.  First, we shall consider the standard of review, as well as the general rules, which are applicable to cases that have been dismissed on preliminary objections due to lack of personal jurisdiction.  Secondly, we shall examine the Pennsylvania Long–Arm Statute to determine which provision applies to cases such as the one *sub judice*.  Thirdly, we shall consider what must be pled to meet, at least preliminarily, the minimum requirements of the applicable provision of the Pennsylvania Long–Arm Statute.  Finally, we shall apply the above considerations to the facts of the instant case and dispose of the issues raised on appeal.

## I.  STANDARD OF REVIEW

■ Our standard of review of an appeal from an order granting a preliminary objection which challenged the exercise of *in personam* jurisdiction has been summarized as follows:

> [W]hen preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt.  (citation omitted).  Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party.

*Delaware Valley Underwriting v. Williams & Sapp*, 359 Pa.Super. 368, 373, 518 A.2d 1280, 1282 (1986) (citations omitted).  *See also Gordon v. Pennsylvania Blue Shield*, 378 Pa.Super. 256, 548 A.2d 600, 601 (1988).

■ When a defendant wishes to challenge the court's exercise of *in personam* jurisdiction, he may do so by filing preliminary objections.  *Lox, Stock & Bagels, Inc. v. Kotten Machine Co. of California, Inc.*, 261 Pa.Super. 84, 87, 395 A.2d 954, 955 (1978).  As the moving party, the defendant, has the burden of *supporting* its objections to the court's jurisdiction.  *Schmitt v. Seaspray–Sharkline, Inc.*, 366 Pa.Super. 528, 531, 531 A.2d 801, 803 (1987) (emphasis

in original); *Delaware Valley Underwriting v. Williams &*
*Sapp, supra,* 518 A.2d at 1283 (emphasis added).

■■■ Once the plaintiff has produced some evidence to
support jurisdiction, the defendant must come forward with
some evidence of his own to dispel or rebut the plaintiff's
evidence. *Schmitt v. Seaspray–Sharkline, Inc., supra,*
531 A.2d at 803; *Alumbaugh v. Wallace Business Forms,*
226 Pa.Super. 511, 516, 313 A.2d 281, 283 (1973). The
moving party may not sit back and, by the bare allegations
as set forth in the preliminary objections, place the burden
upon the plaintiff to negate those allegations. *Schmitt v.*
*Seaspray–Sharkline, Inc., supra; Alumbaugh v. Wallace*
*Business Forms, supra.* Only when the moving party has
properly raised the jurisdictional issue does the burden of
proving jurisdiction fall upon the party asserting it. *Biel v.*
*Herman Lowenstein, Inc.,* 411 Pa. 559, 563, 192 A.2d 391,
393 (1963); *Schmitt v. Seaspray–Sharkline, Inc., supra,*
531 A.2d at 803.

■■■ Where an essential factual issue arises from the
pleadings as to the scope of a defendant's activities within
the Commonwealth, the plaintiff has the right to depose
defendant as to his activities within the Commonwealth, and
the court must permit the taking of the deposition before
ruling on the preliminary objections. *Schmitt v. Seaspray–*
*Sharkline, Inc., supra; Manchel v. Weil,* 272 Pa.Super.
591, 595, 416 A.2d 1054, 1056 (1979). Where neither party
presents evidence by which the court can properly resolve
the issue, it is appropriate to remand with directions that an
order be entered allowing the parties a reasonable period of
time in which to present evidence by deposition, interrogato-
ries or otherwise. *Schmitt v. Seaspray–Sharkline, Inc.,*
*supra; Lox, Stock & Bagels, Inc. v. Kotten Machine Co. of*
*California, Inc., supra,* 395 A.2d at 956.

## II. THE PENNSYLVANIA LONG–ARM STATUTE
The Pennsylvania Long–Arm Statute, 42 Pa.C.S.A.

§ 5322,[4] is basically divided into two sections. Section (a) contains ten subsections, which specify particular types of contact with Pennsylvania which will be deemed sufficient to warrant the exercise of long-arm personal jurisdiction. Section (b) is a catchall provision which authorizes the exercise of personal jurisdiction over persons who do not come within one of the express provisions of the ten subsections of section (a) so long as the minimum requisites of federal constitutional law are met. In the instant case, appellant contends that § 5322(a)(4) or, alternatively, § 5322(b) provides the basis for the exercise of personal jurisdiction over appellee. Appellant contends that appellee's non-payment of alimony and/or other forms of economic relief provided in the Divorce Code [5] would fall under 42 Pa.C.S.A. § 5322(a)(4) and therefore permit the courts of this Commonwealth to exercise *in personam* jurisdiction over appellee. Alternatively, appellant contends that the site of the marital domicile alone is sufficient to satisfy the minimum contacts of 42 Pa.C.S.A. § 5322(b).

The separate provisions of 42 Pa.C.S.A. § 5322(a)(1–10) set forth various circumstances which the legislature presumed to meet the minimum requisites of due process. Section 5322(b) authorizes long-arm jurisdiction in any other

---

4. The Pennsylvania Long-Arm Statute states:

    (a) General Rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by an agent, as to a cause of action or other matter arising from such person:

        \*     \*     \*     \*     \*     \*

    (3) Causing harm or tortious injury by an act or omission in this Commonwealth.

    (4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

        \*     \*     \*     \*     \*     \*

    (b) Exercise of full constitutional power over nonresidents.—In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.
42 Pa.C.S.A. § 5322(a) and (b).

5. 23 Pa.C.S.A. § 101 *et seq.*

situations where the minimum requisites of due process are met. As a practical matter, each of the ten subsections of § 5322(a) are wholly subsumed within the catchall provision of § 5322(b). Consequently, we find that it is unnecessary and perhaps unwise to enter into a subtle and potentially confusing analysis of the precise scope of any of the subsections of § 5322(a). Rather, the only appropriate focus in cases such as the one *sub judice* is whether the minimum requisites of due process have been met. If they have not been met, the various subsections of § 5322(a) cannot statutorily authorize an unconstitutional exercise of *in personam* jurisdiction. If they have been met, then § 5322(b) authorizes the exercise of *in personam* jurisdiction, and any analysis of the potential applicability of the subsections of § 5322(a) would be superfluous.

Thus, we decline to consider whether § 5322(a)(4) applies to the instant case. "Because our long-arm statute permits the courts of this Commonwealth to exercise personal jurisdiction over nonresident defendants 'to the fullest extent allowed under the Constitution of the United States,' ..., we need only decide whether holding ... [the nonresident defendant] subject to a suit in Pennsylvania would be a violation of due process." *Temtex Products, Inc. v. Kramer, supra,* 479 A.2d at 505, 506.

### III.  REQUISITES OF 42 Pa.C.S.A. § 5322(b)

In order to determine whether marital domicile provides the minimum contact necessary to satisfy the due process requirement of 42 Pa.C.S.A. § 5322(b), we shall first examine the constitutional principle of due process as set forth by the United States Supreme Court. Next, we shall turn for guidance to our sister states to see how they have decided the narrow issue presented in the instant case. And finally, we shall examine case law from this Commonwealth which has defined "domicile" to determine what facts must be pled to support the legal conclusion of marital domicile.

A.

■■■■■ The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting the rights or interests of nonresident defendants. *See Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). A valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. *See Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878). The United States Supreme Court in *International Shoe Co. v. Washington,* stated:

[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). This test of "minimum contacts" announced in *International Shoe Co. v. Washington, supra,* is not susceptible of mechanical application; rather the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present. *Kulko v. Superior Court of California,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). The Court recognized in *Kulko v. Superior Court of California, supra,* that "this determination is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko v. Superior Court of California, supra,* 436 U.S. at 92, 98 S.Ct. at 1697, 56 L.Ed.2d at 141 *quoting Estin v. Estin,* 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561, 1566 (1948).

The nature of the required "minimum contacts" has generally been given broad interpretation and emphasis has been placed upon the aspect of fair play and substantial justice. However, the United States Supreme Court, in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d

1283 (1958), warned that "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." 357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d at 1296.

While the interest of the forum state and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice are to be considered,[6] "an essential criterion in all cases is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in ... [the forum] state." *Kulko v. Superior Court of California, supra,* 436 U.S. at 92, 98 S.Ct. at 1697, 56 L.Ed.2d at 141 *quoting International Shoe Co. v. Washington, supra,* 326 U.S. at 316–317, 66 S.Ct. at 159, 90 L.Ed. at 103. Thus, the existence of personal jurisdiction generally depends upon the presence of reasonable notice to the defendant that an action has been brought[7], and a sufficient connection between the defendant and the forum state to make it fair to require defense of the action in the forum state.

### B.

In light of these general constitutional principles, we must consider whether the prior establishment of a marital domicile in the forum state, by itself, is a sufficient contact to permit the forum state to exercise *in personam* jurisdiction over a nonresident, nondomiciliary defendant with respect to claims arising from the marital relationship. Essentially, we must consider whether the nonresident, nondomiciliary defendant's activity in the forum state, *i.e.* the prior establishment of a marital domicile, is such that it would be reasonable and fair to require him or her to conduct a defense in the forum state. Because the appel-

6. *Abbott v. Abbott,* 125 Misc.2d 837, 842, 480 N.Y.S.2d 185, 189 (1984) ("unless the balance is strongly in favor of defendant, the plaintiff's choice of forum should rarely be disturbed" *quoting Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947)).

7. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–314, 70 S.Ct. 652, 656–57, 94 L.Ed. 865, 872–73 (1950).

late courts in this Commonwealth have not previously addressed this narrow issue, we turn to our sister states for guidance.

Some of our sister states have enacted specific provisions in their long-arm statutes which provide that personal jurisdiction over the nonresident defendant may be exercised for actions seeking alimony, support or property settlement when the forum state was the site of the marital domicile of the parties and the plaintiff continues to be domiciled in that state.[8] A majority of states now provide long-arm jurisdiction for the support, alimony and property divisions incidents of divorce actions when the defendant lived in the state just before the separation and the plaintiff has continued to live there.[9]

Other states provide for long-arm jurisdiction in such actions under general "any constitutional basis" clauses similar to 42 Pa.C.S.A. § 5322(b).[10] The exercise of long-arm jurisdiction has been upheld in states which have "any constitutional basis" provisions when the forum was not the last marital domicile,[11] and even when it was never the

8. R. Casad, *Jurisdictions in Civil Actions,* at 9–19 (1983) (collecting cases); *Lieb v. Lieb,* 53 A.D.2d 67, 385 N.Y.S.2d 569 (1976) (collection of long-arm statutes with specific provisions relating to domestic relations).

9. R. Casad, *supra,* at 9–20 (collecting cases); *see Morgan v. Morgan,* 95 A.D.2d 593, 467 N.Y.S.2d 593 (1983) (New York Supreme Court, Appellate Division, First Department considered, *inter alia,* the fact that New York was the site of the marital domicile of the parties prior to separation in finding that *in personam* jurisdiction could be exercised over nonresident, nondomiciliary defendant pursuant to state long-arm statute); *Abbott v. Abbott, supra,* (*in personam* jurisdiction exercised over defendant-wife, because she had sufficient minimum contacts with New York, *i.e.,* lived in New York for one year and had a child while in New York).

10. *See* footnote 4, *supra.*

11. *Williams v. Williams,* 121 N.H. 728, 433 A.2d 1316 (1981) (the Supreme Court of New Hampshire held that *in personam* jurisdiction could be exercised over the nonresident defendant-wife in an action for divorce and distribution of marital property despite the fact that New Hampshire was *not* the marital domicile because the nonresident defendant-wife owned real estate jointly with the resident plaintiff-husband; jointly owned a bank account and certificate of deposit in New Hampshire; sent her children to school and to summer camp in

marital domicile.[12]   However, attempts to exercise long-arm jurisdiction over a nonresident defendant who was never domiciled in the forum state regarding claims arising from the marital relationship have generally been denied as unreasonable. *See Kulko v. Superior Court of California, supra,* (mere fact that plaintiff and children of marriage are domiciled in forum state and parties were married in forum state does not support long-arm jurisdiction over defendant for award of support, alimony or property; defendant was never domiciled in forum state).

The fact of marital domicile within the forum has been considered an important factor to consider in determining whether a forum state may reasonably. exercise *in personam* jurisdiction over a nonresident, nondomiciliary defendant. For example, in *Hines v. Clendenning,* 465 P.2d 460 (Okla.1970), the Supreme Court of Oklahoma held that *in personam* jurisdiction could be exercised over the nonresident husband in a divorce action which contained a prayer for the payment of alimony, costs and attorney fees because, *inter alia,* "the wife was effectively abandoned in Oklahoma *and her right, if any, to alimony accrued at least in part in Oklahoma."* [13]   465 P.2d at 463 (emphasis added).

New Hampshire; and spent several months of each year for eight years with husband in New Hampshire, thereby having sufficient minimum contacts with New Hampshire so that exercise of *in personam* jurisdiction would not offend traditional notions of fair play and substantial justice).

12.   R. Casad, *supra,* at 9–21; *Hann v. Hann,* 175 N.J.Super. 608, 421 A.2d 607 (1980) (*in personam* jurisdiction upheld over nonresident, nondomiciliary defendant-husband in New Jersey in action for separate maintenance despite that fact that husband and wife had resided together in Pennsylvania during their forty year marriage prior to wife's leaving the marital home because: (1) husband and wife jointly owned rental property in New Jersey; (2) husband had previous contacts in New Jersey to work on such properties; and (3) husband, after separation, had significant contacts in New Jersey while driving around wife's place of employment and up and down street where wife resided thereby having sufficient minimum contacts with New Jersey so that exercise of *in personam* jurisdiction did not offend traditional notions of fair play and substantial justice).

13.   The Oklahoma Long–Arm Statute used in *Hines v. Clendenning, supra,* held that the following could be used as a basis for jurisdiction:

On the other hand, the fact of prior marital domicile in the forum state alone does not necessarily trigger the exercise of long-arm jurisdiction in all cases. In *Nickerson v. Nickerson,* 25 Ariz.App. 251, 542 P.2d 1131 (1975), the Court of Appeals of Arizona held that where the parties had left Arizona and established a new site of matrimonial domicile in New York, the subsequent return of the plaintiff-wife to Arizona did not provide sufficient connection between Arizona and the absent spouse, defendant-husband, to authorize *in personam* jurisdiction over him under the Arizona long-arm statute.[14] In reaching its decision the Court explained:

We hold that when a person has established a matrimonial domicile in the State of Arizona that person has caused an event to occur in this state which authorized *in personam* jurisdiction under Rule 4(e)(2), Arizona Rules of Civil Procedure. *The establishment of a matrimonial domicile provides such a nexus with the state that traditional notions of fair play and substantial justice will not be offended by the exercise of in personam jurisdiction over an absent spouse in an action*

> maintaining any other relation to this state or to persons or property including support for minor children who are residents of this state which affords a basis for the exercise of personal jurisdiction by this state consistently with the Constitution of the United States. 12 O.S.1967 Supp., Sec. 187(a). In *Hines v. Clendenning, supra,* the Oklahoma Supreme Court construed this portion of the long-arm statute as follows:
> Although this language presents some problem in statutory construction, it is clear from the concluding portion that it was the intention of our legislature to extend the jurisdiction of Oklahoma courts over nonresidents to the outer limits permitted by the due process requirement of the United States Constitution. 465 P.2d at 462.

**14.** The pertinent part of the Arizona Long–Arm Statute used in *Nickerson v. Nickerson, supra,* provides;
> When the defendant is a resident of this state, or is a corporation doing business in this state, or is a person, partnership, corporation or unincorporated association subject to suit in a common name which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose, service may be made as herein provided, and when so made shall be of the same effect as personal service within the state.... Arizona's Rules of Civil Procedure Rule 4(e)(2).

*brought by a resident spouse concerning marital obligations.* Denial of such *in personam* jurisdiction would only encourage migratory divorces by offering a shield to the spouse wishing to avoid financial responsibilities. *However, in order to warrant Arizona in personam jurisdiction, Arizona must be the last state of matrimonial domicile.*

542 P.2d at 1133. (Emphasis added).

Finally, in some cases the mere fact of prior residence without establishing domicile may provide minimum contacts sufficient to justify the exercise of long-arm jurisdiction. In *Brislawn v. Brislawn,* 443 So.2d 32 (Ala.1983), the Supreme Court of Alabama found that the courts of Alabama could exercise *in personam* jurisdiction over a non-resident defendant-husband who had spent only *ten days* in Alabama with his wife before they left for a tour of military duty in West Germany. The Supreme Court of Alabama held that *in personam* jurisdiction could be exercised over the non-resident husband without violating constitutional due process requirements because Alabama was the only place in the United States where the parties had lived together as husband and wife, except for their wedding night in Georgia. The Court concluded that under those facts, Alabama had a more significant connection with the marital relationship of the parties than any other jurisdiction in the United States. The Court distinguished the facts in *Brislawn* from those in *Corcoran v. Corcoran,* 353 So.2d 805 (Ala.Civ.App.1978). In *Corcoran, supra,* the parties were domiciled together as husband and wife in North Carolina, not Alabama, and had not lived in Alabama for over four years before the wife returned to Alabama to file for a divorce. In *Corcoran,* the Alabama Appeals Court held that the wife's return to Alabama did not permit the courts of Alabama to exercise *in personam* jurisdiction over the husband. The court found that the husband had not lived in Alabama for over four years, and North Carolina, as the last state of marital domicile, had more significant connections with the marital relationship.

"Marital domicile" has been used by our sister states both as a sufficient basis to permit the exercise of *in personam* jurisdiction, and as a significant factor to consider in determining whether *in personam* jurisdiction should be exercised under a long-arm jurisdiction statute. We find these cases to be persuasive as to the type of factors necessary to determine whether long-arm jurisdiction may and ought to be exercised in a particular case.

## C.

■ However, the determination of a person's domicile cannot be made with mechanical ease.[15] A declaration of domicile alone is self-serving and insufficient; it must be supported by acts which are in accordance with the declaration. *Alburger v. Alburger,* 138 Pa.Super. 339, 10 A.2d 888 (1940); *McCarthy v. Philadelphia Civil Service Commission,* 19 Pa.Cmwlth. 383, 339 A.2d 634 (1975) *aff'd* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976). Domicile, itself, is a conclusion to be drawn from the facts in evidence. *Commonwealth v. Petrosky,* 168 Pa.Super. 232, 77 A.2d 647 (1951); *See also DiMilia v. DiMilia,* 204 Pa.Super. 188, 203 A.2d 382 (1964); *Commonwealth ex rel. Harmon v. Harmon,* 172 Pa.Super. 459, 94 A.2d 181 (1953).

■ The term "domicile" has been defined in this Commonwealth as:

... the place in which, both in fact and intent, the home of a person is established without any purpose to return to a former home; the place where he lives, in distinction from that where he transacts his business; the place where he chooses to abide, in distinction from that in which he may be for a temporary purpose....

15. As Justice Cardozo stated: "Domicile suggests the home, with the peace, the freedom from contention, that is thought to reign about the fireside.... I know my own home, and am prepared, even after following the restatement [by the American Law Institute], to maintain its identity against the competition of localities less favored. I am not so ready as once I might have been, to make unqualified assertions about the moorings of my friends." Address by Justice Benjamin N. Cardozo, American Law Institute Third Annual Meeting (May 1, 1925), *reprinted in* Cardozo, *Law and Literature,* at 130 (1931).

*Wallace v. Wallace*, 371 Pa. 404, 410, 411, 89 A.2d 769, 771 (1952); *see also Bell v. Bell*, 326 Pa.Super. 237, 248, 473 A.2d 1069, 1075 (1984). Thus, "it seems that a person's domicile is increasingly being determined by close scrutiny of his subjective intentions or state of mind as to whether or not he considers a particular place to be his home." *McKenna v. McKenna*, 282 Pa.Super. 45, 50, 422 A.2d 668, 670 (1980); *see also Bell v. Bell, supra*, 473 A.2d at 1075. Therefore, "[i]ntent, being purely subjective, must to a large extent be determined by the acts which are manifestations of the intent." *Wallace v. Wallace, supra*, 89 A.2d at 771; *see also Bell v. Bell, supra*, 473 A.2d at 1075. A determination of whether a person is domiciled or had been domiciled in a particular jurisdiction may not be made, then, on bare assertions in legal pleadings, unsupported by a pleading of additional facts establishing the basis for the assertion of domicile.

## IV.  APPLICATION

In the instant case, appellant has alleged that Pennsylvania was the site of the marital domicile of the parties. However, she has not pled the facts upon which this assertion is based.  Moreover, the present record fails to disclose whether the parties ever established marital domicile or marital residence elsewhere in the United States, or whether other factors support or negate a conclusion that Pennsylvania may reasonably, and therefore constitutionally, exercise personal jurisdiction over appellee in this matter. Thus, while it appears that *in personam* jurisdiction *may* be appropriate in this case under the Pennsylvania Long–Arm Statute, we nonetheless find that the present record was inadequate to properly resolve the question of whether the exercise of long-arm jurisdiction is in fact constitutionally permissible in this case.  Because neither party presented sufficient evidence from which the trial court could properly resolve that issue, we remand with directions that an order be entered allowing the parties a reasonable period of time in which to supplement the record on this issue with deposi-

tions, interrogatories, affidavits and other relevant evidence.[16]

## CONCLUSION

The order of the trial court sustaining preliminary objections to personal jurisdiction is vacated and the case is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

16.  Our disposition of appellant's first issue renders appellant's second issue moot. We note, however, that the facts were not in dispute, as appellant claims, rather they were insufficient to resolve the issue in dispute. *Cf. Schmitt v. Seaspray–Sharkline, Inc.,* 366 Pa.Super. 528, 531 A.2d 801 (1987).