# Thompson v. Santiago

C.P. of Dauphin County, no. 1142 DR 2000.

*Harry Bricker Jr.,* for plaintiff.
*Anthony McBeth,* for defendant.

TURGEON, *J.,* April 9, 2001—The issue before this court is whether a North Carolina court had personal jurisdiction over Carlos Santiago, a Pennsylvania resident, when it established his paternity of a 16-year-old child. Defendant raised the issue in response to plaintiff's registration of the North Carolina order in Dauphin County for purposes of enforcing child support and arrearages against him under the Uniform Interstate Family Support Act (UIFSA). For the reasons set forth below, we find the North Carolina court lacked personal jurisdiction over defendant.

## BACKGROUND

On March 18, 1999, the Robeson County Child Support Enforcement Agency (RCEU), in its own right and on behalf of Hazel Thompson, filed a civil summons and complaint against Carlos Santiago in the Robeson County District Court in North Carolina. The complaint sought to establish defendant as the biological father of Hazel Thompson's son, Seneca Thompson (d.o.b. April 11,

1982). The complaint also sought to impose a child support obligation and seek reimbursement for North Carolina public assistance paid to the child. (Appendix A, [not] attached hereto.) Both Ms. Thompson and her son are Robeson County residents. The North Carolina record indicates that the summons and complaint were served upon Santiago by certified mail on March 29, 1999, as evidenced by Santiago's signed return receipt.

A North Carolina paternity/support hearing was held June 21, 1999, at which plaintiff appeared but defendant did not. Plaintiff, the sole witness, testified she became pregnant in July 1981 after she had legally separated from her husband, John D. Baker Jr. She also testified that sometime in 1998, she and the child had visited defendant in Pennsylvania and that defendant acknowledged paternity of him at that time. (N.C. hearing N.T. 2-3.) (Appendix B.) Plaintiff did not offer any evidence to support her allegation in the complaint that the child had been conceived in North Carolina.

Thereafter, the North Carolina court issued a judgment, July 9, 1999, establishing defendant's paternity and support obligation. The judgment contained findings of fact, including that the child was conceived as the result of sexual intercourse occurring between the parties in North Carolina, that defendant received proper notice of the action and was capable of paying child support of $95 per month and $100 per month on arrears. The court concluded as a matter of law that it had jurisdiction over the action and all parties, that defendant was the father, was obligated to provide reasonable continuing child support and was obligated to reimburse North Carolina for past-

paid public assistance. *Robeson County by and through its Child Support Enforcement Agency ex rel. Hazel Thompson v. Carlos L. Santiago and John D. Baker Jr.,* no. 99 CVD 893 (Robeson County District Court, N.C., July 9, 1999). (Appendix C.)

On May 11, 2000, pursuant to the UIFSA, the RCEU, acting on behalf of Hazel Thompson, registered the North Carolina support order in Dauphin County. See 23 Pa.C.S. §7601. The registered order indicated that defendant was obligated to pay $195 per month in child support and owed accrued arrears of $6,931.50 (as of January 31, 2000). Defendant was notified about the North Carolina order by certified mail on May 17, 2000. 23 Pa.C.S. §7605. On June 8, 2000, defendant filed a motion in this court seeking to dismiss the action or open judgment on the basis that the North Carolina court had lacked personal jurisdiction over him. 23 Pa.C.S. §7607(a)(1). He averred he did not receive service (notice) of the North Carolina proceeding and first became aware of the action in December 1999, when his credit report showed a judgment for back support. Defendant also averred that the child was not conceived in North Carolina, that he had never lived there and that he had no connection with that state.

On July 10, 2000, after plaintiff failed to respond to a rule to show cause, this court entered an order, upon defendant's motion to make the rule absolute, granting defendant's motion to open judgment. On July 13 and July 17, 2000, defendant filed demands for de novo hearings regarding the validity of the registered order. A hearing was held August 3, 2000, wherein defendant pre-

sented the only testimony. Plaintiff did not appear but was represented, through RCEU, by local counsel. Defendant testified that he is a lifelong resident of Harrisburg, Dauphin County, and has never been to North Carolina. (Pa. hrg. N.T. 8.) He claimed to have met plaintiff in Harrisburg on one occasion in July 1981, approximately nine months prior to Seneca's birth, when she was visiting from North Carolina. (Pa. hrg. N.T. 9-10.) He admitted having sexual intercourse with her during her visit. (Pa. hrg. N.T. 11.) Following the hearing, I took the matter under advisement and following the transcription of the de novo hearing, the parties submitted briefs. In addition, pursuant to UIFSA procedure, I requested and received the relevant North Carolina files. 23 Pa.C.S. §7317.

## LEGAL DISCUSSION

### I.

It is beyond dispute that the North Carolina court needed personal jurisdiction over defendant in order to adjudicate the paternity/support action. The North Carolina Supreme Court has held that since a paternity judgment "necessarily fixes upon the adjudicated father a personal obligation for the support of the minor child," it is a proceeding in personam, noting "the extremely harsh and unfair consequences of an erroneous judgment." *Brondum v. Cox,* 232 S.E.2d 687, 692-93 (N.C. 1977). (citation omitted) See also, *Johnson v. Johnson,* 188 S.E.2d 711 (N.C. App. 1972) (court must have personal jurisdiction over the defendant in an action for child

support). The determination of whether a North Carolina court can properly exercise personal jurisdiction over a nonresident defendant involves a two-part inquiry. First, the North Carolina long arm statute must permit the exercise of personal jurisdiction. Second, the exercise of personal jurisdiction must comport with the due process clause of the Fourteenth Amendment of the United States Constitution. *Filmar Racing Inc. v. Stewart*, 541 S.E.2d 733 (N.C. App. 2001).

The North Carolina long arm statute permits the exercise of personal jurisdiction over a nonresident when the defendant is properly served and there exists a statute which specifically confers personal jurisdiction over the person. N.C.G.S. §§1-75.3(b) and 1-75.4(2). North Carolina exercised personal jurisdiction over defendant under two statutes—a paternity law and the North Carolina UIFSA—which specifically confer jurisdiction over a nonresident or non-present defendant in a paternity/support action where the putative father has engaged in sexual intercourse in North Carolina and the child may have been conceived by that act of intercourse. N.C.G.S. §52C-2-201(6) and §49-17(a). Service of process over a nonresident must be made in accordance with the North Carolina Rules of Civil Procedure, Rules 4(j) or Rule 4(j1). N.C.G.S. §1-75.6. Rule 4(j) permits service of the summons and complaint upon a natural person by registered or certified mail, return receipt requested, addressed and delivered to the party to be served. N.C.G.S. §1A-1, Rule 4(j). Under North Carolina law, service by registered mail is deemed reasonably calculated to apprise interested parties of the pendency of the action and af-

ford them an opportunity to present their objections, and therefore complies with due process requirements. *Chadbourn Inc. v. Katz,* 208 S.E.2d 676 (N.C. 1974).

Assuming the long arm statute is satisfied, the inquiry becomes whether the defendant had sufficient minimum contacts with North Carolina so as not to offend due process requirements. *Harris v. Harris,* 410 S.E.2d 527, 531 (N.C. App. 1991). The existence of minimum contacts "depends upon . . . a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum." *Kulko v. Superior Court of California,* 436 U.S. 84, 91 (1978).

The UIFSA specifically permits a defendant in the state receiving and certifying a UIFSA order to raise the defense of lack of personal jurisdiction by the issuing court, as follows:

"Section 7607. Contest of registration or enforcement.

"(a) Defenses.—A party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving any of the following defenses:

"(1) The issuing tribunal lacked personal jurisdiction over the contesting party. . . ." 23 Pa.C.S. §7607. Compare, *Barr v. Barr,* 749 A.2d 992 (Pa. Super. 2000).

Pennsylvania adopted the UIFSA to provide for the interstate registration and enforcement of modifiable support obligations. See *Clark v. Clark,* 714 A.2d 427, 430 (Pa. Super. 1998). UIFSA, and its predecessors, address interstate enforcement of support orders. While each state must give "full faith and credit to the . . . judicial

proceedings of every other state" under Article IV, Section 1 of the United States Constitution, this provision applies only to final orders. Since child and spousal support orders are modifiable, they are considered non-final orders not subject to the full faith and credit clause. *Id.* (citing *Schoenfeld v. Marsh,* 418 Pa. Super. 469, 475, 614 A.2d 733, 736 (1992)). Under UIFSA, however, once a foreign support order is registered in the Commonwealth, it is entitled to statutorily-based "faith and credit" and must be enforced as if it had been issued here. *Id.* (citing 23 Pa.C.S. §7603). On the other hand, a paternity finding, as well as a decision regarding the amount of past due arrearages, are final orders entitled to constitutionally-based full faith and credit in Pennsylvania. *Chrzanowski v. Chrzanowski,* 325 Pa. Super. 298, 303-304, 472 A.2d 1128, 1131 (1984). Under the UIFSA, the nonregistering party must receive notice of the registration and is provided a mechanism to contest the validity or enforcement of the registered order. *Id.* (citing 23 Pa.C.S. §7605-7606). Defendant, properly notified of the certified North Carolina judgment, has contested its validity.

## II.

Initially, we address plaintiff's argument that defendant should have litigated the lack of notice and personal jurisdiction questions, as well as the merits, in North Carolina. *Kulko v. Superior Court, supra.* Defendant was fully within his rights, however, in waiting to attack the paternity/support judgment in Pennsylvania as clearly authorized not only under UIFSA, but also Pennsylva-

nia law in general, *First Fidelity Bank N.A. v. Standard Machine & Equipment Company,* 398 Pa. Super. 607, 611, 581 A.2d 629, 631 (1990), *alloc. denied,* 527 Pa. 593, 588 A.2d 914 (1991); *Joshi v. Nair,* 418 Pa. Super. 448, 614 A.2d 722 (1992), and federal law, *Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding."). Accordingly, we address defendant's collateral attack on the North Carolina judgment.

## III.

As set forth above, the North Carolina judgment is entitled to both constitutionally- and statutorily-based full faith and credit. "However, we have a corollary duty—equally as great—to protect our citizens from an abuse of that constitutional provision by inquiring carefully and thoroughly into the jurisdiction of the courts of a sister state to enter judgments affecting the rights of our citizens." *Commonwealth ex rel. Barker v. Barker,* 160 Pa. Super. 263, 265, 50 A.2d 739, 740 (1947). Thus, a state court judgment need not be given full faith and credit by sister states as to parties or property not subject to the jurisdiction of the court that rendered it or without notice and a fair opportunity to be heard. *Durfee v. Duke,* 375 U.S. 106, 109 (1963); *Everson v. Everson,* 494 Pa. 348, 361, 431 A.2d 889, 895-96 (1981); *Barnes v. Buck,* 464 Pa. 357, 364, 346 A.2d 778, 782 (1975); *Chrzanowski v. Chrzanowski* at 304, 472 A.2d at 1131. Nevertheless,

our Supreme Court has recognized that there is a presumption of validity attached to the acts of a foreign court concerning its jurisdiction to act and the regularity of its proceedings when it purports to act on the merits of a case. *Barnes v. Buck,* 464 Pa. 357, 364, 346 A.2d 778, 782 (1975). A foreign judgment constitutes "a conclusive adjudication of everything involved therein except the jurisdictional facts on which it is founded." *Chrzanowski* at 304, 472 A.2d at 1131 (citing *Stambaugh v. Stambaugh,* 458 Pa. 147, 151, 329 A.2d 483, 485 (1974)). "While a recital in a foreign decree of the jurisdictional facts necessary to its universal validity is not conclusive outside the state of its origin, *Thompson v. Whitman,* [85 U.S. 457,] 18 Wall. 457, 21 L.Ed. 897, the decree is prima facie valid and the burden is on the party attacking it to show by a preponderance of the evidence that jurisdiction was in fact lacking. *Com. ex rel. Cronhardt v. Cronhardt,* 127 Pa. Super. 501, 193 A. 484." *Commonwealth ex rel. Meth v. Meth,* 156 Pa. Super. 632, 637-38, 41 A.2d 752, 755 (1945); see 23 Pa.C.S. §7607(a)(1) (under UIFSA defendant carries the burden of proof); see also, *Romero v. Mattioli Construction Co.,* 193 Pa. Super. 90, 94, 163 A.2d 671, 673 (1960) ("the tendency has been strong to open the door to evidence" going to the court's jurisdiction and thus the party attacking the foreign judgment is permitted to contradict the foreign court record regarding jurisdictional facts). The presumption of the validity of foreign judgments falls as soon as credible evidence is introduced to contradict it. *Thys Co. v. Harvard Industries Inc.,* 205 Pa. Super. 472, 210 A.2d 913 (1965).

However, where a sister state has "fully and fairly litigated" the jurisdictional issue, and has finally decided the jurisdictional question, a second state may not re-examine the question but must give the judgment of the first state full faith and credit, even if the jurisdictional determination is erroneous. *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Ins. Guar. Ass'n,* 455 U.S. 691, 706-707 (1982); *Durfee v. Duke* at 111; *Morris Lapidus Associates v. Airportels Inc.,* 240 Pa. Super. 80, 85-86, 361 A.2d 660, 663 (1976); *Connellsville Township Supervisors v. Connellsville,* 14 Pa. Commw. 532, 536, 322 A.2d 741, 742 (1974). This standard was explained by the United States Supreme Court in *Durfee v. Duke* as follows:

"[W]hile it is established that a court in one state, when asked to give effect to the judgment of a court in another state, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—*when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.*

"With respect to questions of jurisdiction over the person, this principle was unambiguously established in *Baldwin v. Iowa State Traveling Men's Assn.,* 283 U.S. 522. There it was held that a federal court in Iowa must give binding effect to the judgment of a federal court in

Missouri despite the claim that the original court did not have jurisdiction over the defendant's person, once it was shown to the court in Iowa that that question had been fully litigated in the Missouri forum. 'Public policy,' said the court, 'dictates that there be an end of litigation; that those who have contested an issue shall be bound by the results of the contest, and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he had submitted his cause. . . .' " *Id.* at 111. (emphasis added)

Furthermore, the requirements of full faith and credit and res judicata apply as well where a party to a foreign judgment did not fully litigate the jurisdictional issue but was nevertheless given the opportunity to raise the matter and it was within the scope of the prior proceeding. *Underwriters National Assurace Co.* at 710; *Sherrer v. Sherrer,* 334 U.S. 343 (1948) (divorce court's finding of jurisdiction was res judicata and entitled to full faith and credit in Massachusetts where husband had appeared and participated in a Florida divorce proceeding but failed to raise the jurisdictional question). Under such circumstances, the defendant waives raising the issue collaterally. See *Cairns v. Cairns,* 741 A.2d 800, 802 (Pa. Super. 1999) (father could not collaterally attack, in a Pennsylvania court, Oregon's personal jurisdiction over him in a child support action where he had opportunity to raise issue by appearing in Oregon UIFSA proceedings);

*Chrzanowski,* 325 Pa. Super. 298, 472 A.2d 1128 (father precluded from relitigating paternity issue in Pennsylvania where issue was finally litigated in Virginia).

## IV.

Thus, our inquiry is whether the North Carolina court's ex parte proceeding constituted a full and fair litigation of the jurisdictional issues, including notice. To decide issues related to North Carolina's exercise of personal jurisdiction over defendant, we look to the law of North Carolina. *First Fidelity; Joshi v. Nair, supra.*

With regard to notice, the North Carolina Supreme Court has stated that "when a party against whom a default judgment was entered subsequently challenges the validity of the original proceeding on the grounds that he did not receive adequate notice, the reviewing court ordinarily must examine the underlying facts in the record to determine if they support the conclusion that the notice given of the original proceeding was adequate." *Boyles v. Boyles,* 302 S.E.2d 790, 793 (N.C. 1983). Although the North Carolina judgment was technically not entered as a default judgment, it was nevertheless entered upon an ex parte hearing and thus did not constitute a full and fair litigation of the issues, a conclusion discussed in greater detail, *infra.* Accordingly, it is appropriate to examine the underlying record to determine if notice was adequate.

The North Carolina record provided to this court, contained a return receipt signed in the name of "Carlos Santiago." "A return of process, including an acceptance of service, 'is strong or at least prima facie evidence of

the facts stated therein,' however, 'it is not conclusive and may be rebutted or impeached' by clear, unequivocal, and convincing evidence. 'The return may be attacked by the oral testimony of the defendant.' " *Latimer v. Latimer,* 522 S.E.2d 801, 802 (N.C. App. 1999). (citations omitted) Defendant testified at the de novo hearing before this court that he did not receive service. However, this court has compared the signature contained on the North Carolina return receipt with the "Carlos Santiago" signature provided on the return receipt of the registered Dauphin County support order and found them to be nearly identical. (Appendix D.) Thus, defendant failed to sufficiently rebut the evidence that he was properly served with a copy of the summons and complaint via certified mail.

With regard to personal jurisdiction, the North Carolina Supreme Court requires that the initial court "fully and fairly litigate" the jurisdictional issue in order for the jurisdictional decision to be given full faith and credit in the second court. *Boyles v. Boyles, supra* (citing *Underwriters Ntl. Assurance*) and *Hosiery Mills v. Burlington Industries Inc.,* 204 S.E.2d 834 (N.C. 1974) (citing *Durfee v. Duke*). Our research reveals that the question of whether an ex parte proceeding constitutes a full and fair litigation of jurisdictional issues has never been answered by the North Carolina courts. Generally, there are two categories of cases assessing full and fair litigation. The first is where the initial court enters a default judgment based upon defendant's non-appearance. North Carolina courts have indicated that where the default judgment is later sought to be enforced in a second fo-

rum, the issue of whether the first court had personal jurisdiction over the defendant was not fully and fairly litigated and thus, a full proceeding on personal jurisdiction is appropriate in the second court. *Security Credit Leasing Inc. v. D.J.'s of Salisbury Inc.,* 537 S.E.2d 227, 232 (N.C. App. 2000). In *Security Credit,* the plaintiff, a Florida corporation, sought to enforce a Florida default judgment in North Carolina which had been entered against defendant, a North Carolina corporation. Defendant sought to dismiss the enforcement petition arguing the Florida court lacked personal jurisdiction over it. The North Carolina trial court held a hearing and took evidence on the personal jurisdiction issue. It held, in a decision affirmed by the appellate court, that the Florida court had lacked personal jurisdiction noting that the issue had not been "fully and fairly litigated" there. *Id.* at 229-30. See also, *Boozer v. Wellman,* 343 S.E.2d 540 (N.C. App. 1986) (default judgment in first forum is not a full and fair litigation of whether a defendant received proper notice).

The second category of cases involve situations where the defendant actually litigated personal jurisdiction or had an opportunity to do so but failed. The defendant is clearly precluded in such cases from later mounting a collateral attack on the first court's personal jurisdiction over him. (See cases cited *supra.*)

The ex parte proceeding involved here presents a situation somewhere in between a default judgment and a full hearing (or waiver thereof) of the jurisdictional issue.

Our research has revealed only a single case which has addressed a similar situation. *Nickels v. York,* 725 N.E.2d 997, 1003 (Ind. App. 2000), *transfer denied,* 741 N.E.2d 1258 (Ind. 2000). In *Nickels,* an original paternity judgment was entered against a nonresident defendant who had been duly notified but failed to appear. Both the paternity and underlying personal jurisdiction findings were based upon, among other evidence, the mother's testimony the parties had sexual intercourse in Indiana around the time of conception. Defendant later filed a motion to set aside the paternity judgment arguing it was void since it had been entered without personal jurisdiction. What is of interest to this court is that in deciding the issue on appeal, the court equated the paternity judgment—entered following an ex parte proceeding—to a default judgment. *Id.* at 1003.

As *Nickels* indicates, the only reasonable conclusion is that the ex parte proceeding is not a full and fair litigation of the personal jurisdiction issue but one more equivalent to a default judgment. This conclusion is supported by case law which suggests that full and fair litigation requires that the defendant, or his or her representative, appear, participate and litigate the issue in the first court. The North Carolina Supreme Court in *Hosiery Mills, supra,* addressed, among other things, whether a jurisdictional issue had been "fully and fairly litigated" in deciding whether to grant full faith and credit to a New York arbitration proceeding involving a North Carolina resident. While acknowledging the res judicata effect of prior foreign judgments, the court explained as follows:

"There is no doubt of the general proposition that in a suit upon a judgment the jurisdiction of the court rendering it over the person of the defendant may be inquired into.

"Of course, jurisdiction is, itself, an issue which may have been fully litigated in, and determined by, the court which rendered the judgment thereafter pleaded as a cause of action, or as a defense, in a court of another state, *as where the defendant therein was actually present in the first court and raised and litigated therein a question concerning the fact and validity of the service of its process upon the defendant.*" *Id.* at 840. (emphasis added)

The North Carolina court, quoting from the United States Supreme Court in *Durfee v. Duke,* stated that with regard to issues of personal jurisdiction:

"We see no reason why this doctrine [of res judicata] should not apply in every case *where one voluntarily appears, presents his case and is fully heard,* and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he had submitted his cause." *Id.* at 840-41 (citing *Durfee* at 111; quoting *Baldwin, supra* at 525-26). (emphasis added)

The North Carolina Supreme Court ultimately held that New York lacked personal jurisdiction noting that the North Carolina resident had not appeared, participated nor was represented in the New York proceeding. *Id.* at 841.

Similarly, the Supreme Court in *Baldwin* stated that a defendant must "have its day in court" for the jurisdictional finding in one court to be given res judicata effect

in the second court. On that issue the court held as follows:

"The special appearance gives point to the fact that the respondent entered the Missouri court for the very purpose of litigating the question of jurisdiction over its person. It had the election not to appear at all. *If, in the absence of appearance, the court had proceeded to judgment and the present suit had been brought thereon, respondent could have raised and tried out the issue in the present action, because it would never have had its day in court with respect to jurisdiction." Baldwin* at 525. (citations omitted) (emphasis added) See also, the Restatement (Second) of Judgments §10(2) (foreign judgments determining jurisdictional issues are to be given res judicata effect only after a defendant has objected to personal jurisdiction in the first court). Thus, under *Hosiery Mills; Durfee v. Duke* and *Baldwin,* an issue is "fully and fairly litigated" where a party "has its day in court," *i.e.,* where "one voluntarily appears, presents his case and is fully heard." As such, the North Carolina judgment as to personal jurisdiction is not res judicata and this court must accordingly exercise its duty "by inquiring carefully and thoroughly" into the issue. *Commonwealth ex rel. Barker, supra.*

## V.

As set forth above, the North Carolina decree is prima facie valid and the burden is on the defendant to show by a preponderance of the evidence that jurisdiction was in fact lacking. *Commonwealth ex rel. Meth v. Meth, supra;* 23 Pa.C.S. §7607(a)(1). In reviewing the North

Carolina judgment, we note that the trial court made a factual finding that the child was conceived as the result of sexual intercourse occurring between the parties in North Carolina. Since no evidence supporting these facts was presented during the ex parte proceeding, this finding was necessarily based upon the plaintiff's verified complaint in which the RCEU, upon plaintiff's information, alleged the existence of those jurisdictional facts. In order for the North Carolina court to have entered judgment against defendant—as a non-appearing, properly served party—the plaintiff was required to prove jurisdiction either by asserting jurisdictional facts in a verified complaint or by affidavit or other evidence. N.C.G.S. §1-75.11. See *North Brook Farm Lines Inc. v. McBrayer,* 241 S.E.2d 74, 78 (N.C. App. 1978). Thus, the North Carolina verified complaint established sufficient prima facie proof of jurisdiction upon which the North Carolina court could make its finding of jurisdiction (in an unchallenged action).

Of course, such a finding is not conclusive since the issue of personal jurisdiction in the ex parte proceeding was not fully and fairly litigated, as discussed *supra.* In a sense, the issue was partly litigated and, constitutionally speaking, the North Carolina judgment as to jurisdiction cannot become res judicata until that occurs. Defendant's challenge to jurisdiction in Pennsylvania represents the completion of litigation of the jurisdictional question. Since our focus shifts to the Pennsylvania action, we must decide whether Pennsylvania or North Carolina procedure applies to the jurisdictional attack mounted here. The Pennsylvania UIFSA instructs we must apply the procedural and substantive law, in-

cluding the rules on choice of law, generally applicable to similar proceedings originating in this state. 23 Pa.C.S. §7303(1).

Under Pennsylvania procedure, where a defendant challenges an action for lack of personal jurisdiction, the defendant, as the moving party, bears the burden of supporting its objections. See *Scoggins v. Scoggins,* 382 Pa. Super. 507, 513, 555 A.2d 1314, 1317 (1989). "Once the plaintiff has produced some evidence to support jurisdiction, the defendant must come forward with some evidence of his own to dispel or rebut the plaintiff's evidence." *Id.* at 514, 555 A.2d at 1318. (citations omitted) The moving party may not sit back and rely upon bare allegations set forth in his objections. *Id.* "Only when the moving party has properly raised the jurisdictional issue does the burden of proving jurisdiction fall upon the party asserting it." *Id.* (citations omitted)

Defendant here met his initial burden by filing a motion to dismiss the registered foreign support order whereby he asserted the child was not conceived in North Carolina and that he had no connection to North Carolina. Since plaintiff did not file a response to defendant's motion, the burden shifted to her to prove the existence of North Carolina personal jurisdiction. At this point, there were insufficient facts of record for this court to determine jurisdiction wherein defendant denied the child had been conceived in North Carolina but the North Carolina judgment recited that fact. Where there is insufficient evidence to decide the jurisdictional issue, the court must require the parties to provide evidence by ordering depositions, interrogatories or an evidentiary hearing. *Ambrose v. Cross Creek Condominiums,* 412 Pa.

Super. 1, 12, 602 A.2d 864, 869 (1992). (citations omitted) Defendant sought an evidentiary hearing at which he presented the only evidence as to jurisdictional facts.

Defendant testified before this court that he has never in his life been to North Carolina. In light of the fact that the plaintiff did not appear in the Pennsylvania proceedings to rebut this evidence and presented no other jurisdictional evidence beyond allegations in the North Carolina complaint, she failed to meet her burden of proving that the North Carolina court had personal jurisdiction over defendant when it entered the paternity/support judgment against him.

Accordingly, we enter the following:

## ORDER

And now, April 9, 2001, defendant's motion to dismiss this court's May 11, 2000 order of registration and confirmation of the July 9, 1999 North Carolina judgment, is hereby granted.