410 A.2d 747

APARTMENT OWNERS AND MANAGERS COMMITTEE OF the STATE COLLEGE AREA CHAMBER OF COMMERCE, by Harold Zipser, Chairman, Trustee ad litem; Garden House Realty Co., I & A Corporation, Atlas Realty Co., Inc., and Marie Capparelli, t/d/b/a Casa Di Altamonte Restaurant, Appellants,

v.

Charles C. BROWN, Officially as District Attorney of Centre County, Pennsylvania, Appellee.

Henry F. GNAS, Appellee,

v.

NATALIE'S TOWING SERVICE, INC., Appellant.

Supreme Court of Pennsylvania.

Feb. 1, 1980.

Benjamin Novak, State College, for appellants.

No appearance for appellees.

Before O'BRIEN, ROBERTS, NIX, LARSEN and FLAH-ERTY, JJ.

## OPINION

LARSEN, Justice.

On October 27, 1973, Henry Gnas, appellee in No. 158 January Term, 1978, drove to State College, Pennsylvania to

attend a Penn State football game at Beaver Stadium.* After the game, he and his companions drove to downtown State College for dinner. Mr. Gnas parked his car illegally in a private parking lot near the restaurant in violation of the Vehicle Code, 75 P.S. § 1021.1, *as amended* (1971), which provided:

"No person shall park or leave unattended a vehicle or tractor on private property without the consent of the owner or other person in control or possession thereof, except in the case of emergency or disablement of the vehicle or tractor, in which case, the operator shall arrange for the removal of such vehicle or tractor as soon as possible.

*The owner or other person in charge* or possession *of any land on which a vehicle* or tractor *is parked* or left unattended *in violation of the provisions of this section may remove such vehicle or tractor at the reasonable expense of the owner thereof.*"[1]  (emphasis added).

Upon finding his car missing from the parking lot, Mr. Gnas was informed it was at an auto pound owned and operated by Natalie's Towing Service, Inc., (hereinafter Natalie's) appellant in No. 158 January Term, 1978. Mr. Gnas' brother then went to Natalie's and was apparently told he would not be able to remove the car unless he paid the towing charge of $25.30,[2] which he did. Subsequently, Mr. Gnas filed a complaint in assumpsit in the Court of Common Pleas of Centre County asserting that Natalie's had wrongfully withheld and deprived Gnas of his motor vehicle, and demanded the refund of the towing fee plus interest.

A separate action was initiated by the Apartment Owners and Managers Committee of the State College Area Chamber of Commerce, et al., appellants in No. 157 January Term,

* Penn State's opponent that afternoon was West Virginia University and the final score was Penn State 62—West Virginia 14.

1.  This section was repealed in 1976, but was reenacted in substantially the same language as 75 Pa.C.S.A. § 3353(b) and (c) (1977).

2.  The charge was, specifically, $20.00 for the towing service, $5.00 for storage and $.30 tax.

1978, against the District Attorney of Centre County, Charles Brown, appellee. It seems that the illegal parking of cars on private property was a common occurrence at State College, especially during football games. To combat this problem, the Apartment Owners and Managers Committee persuaded Emanuel Natalie to form a towing service to remove the illegally parked vehicles. It was the practice of Natalie's to release the vehicles to their owners only after payment of the towing fee. In January of 1974, the District Attorney publicly announced at a meeting of the committee that the holding of the towed vehicles pending payment of the towing fee constituted theft under Chapter 39 of the Crimes Code, 18 Pa.C.S. §§ 3901–3931 (1973) and that his office would prosecute the holder of such vehicles for theft. Consequently, Emanuel Natalie discontinued his towing service which prompted the committee to file a Petition for Declaratory Relief requesting a judicial interpretation of the relevant provisions of the Vehicle Code and the Crimes Code. This action was consolidated for trial with Gnas' action in assumpsit.

The lower court dismissed the petition for declaratory relief because it "decline[d] to render an advisory opinion as to a nonexistent case." That court granted the relief requested by Gnas and directed Natalie's to refund the towing fee because "we do not find that it [the Vehicle Code] goes so far as to permit a possessory lien; and, therefore, we find that neither the property owner nor the towing service has a right to retain possession of a towed vehicle until the towing charge is paid."

The cases were consolidated for appeal to the Superior Court which affirmed both judgments. That court agreed that the petition for declaratory judgment should be dismissed for want of a true controversy. As to the Gnas complaint, the Superior Court found no common law lien nor express or implied statutory lien existed so as to justify Natalie's refusal to return Gnas' car until the towing fee was paid.

■ We disagree with the analysis and conclusion of the Superior Court in No. 158. As aptly put by Judge William F. Cercone in his concurring and dissenting opinion, both the majority of the Superior Court and the trial court have indulged in an "unnecessary search for the elusive lien." The issue in this case was not whether the property owner or the towing service has a lien on—and the right to retain possession of—a towed vehicle until the towing fee has been paid, but rather, whether the owner of the towed vehicle has the right to recover his already paid fee from the towing service in an assumpsit action. The posture of this case renders the "search" for a lien justification irrelevant.

The Vehicle Code, 75 P.S. § 1201.1, squarely placed the financial burden for removal of illegally parked vehicles on the owners of such vehicles. The owner of the private property on which the vehicle is parked was authorized to hire another person (Natalie's) to remove the vehicle "at the reasonable expense of the owner thereof" (Gnas). Mr. Gnas cannot be permitted to thwart the clear intentions of the legislature by prevailing in an action to recover those reasonable expenses of towing.

To permit recovery of the towing fee by Gnas would, in practical effect, render the property owner's right to remove illegally parked vehicles from his property a nullity. Where there is a right, there must be a *meaningful* remedy. Were we to affirm the Superior Court, the property owner would be forced to pay the towing service *in advance* for the removal of vehicles and then initiate legal action against the vehicle's owner for those expenses. It is extremely unlikely that many property owners would endure the time and expense of litigation to recover the amount of the towing fee and the right given the property owners by the Vehicle Code would atrophy. We need not address the question of the possible existence of a lien upon a towed vehicle as the true issue here is merely the right of the owner of such vehicle to recover, in an assumpsit action, the expenses of towing from the tower where the statute has expressly placed the financial burden for those expenses on the vehicle owner. The lower court ignored the statutory allocation of

this financial burden in ordering Natalie's to refund the towing fee to Gnas. Accordingly, we reverse the order of the Superior Court at No. 158 January Term, 1978.

■ We agree that the petition for declaratory relief was properly dismissed in No. 157. As the lower court and the Superior Court have held, any controversy in this action was too remote and speculative to be cognizable in a judicial proceeding. Furthermore, the case is moot, given a recent amendment to the Vehicle Code. 75 Pa.C.S.A. § 3353(c) has been amended, by Act 95 of November 10, 1979, effective immediately, to read:

> Property owner may remove vehicle.—The owner or other person in charge or possession of any property on which a vehicle is parked or left unattended in violation of the provisions of subsection (b) may remove or have removed the vehicle at the reasonable expense of the owner of the vehicle. Such person who removes a vehicle left parked or unattended in violation of the provisions of subsection (b) shall have a lien against the owner of the vehicle, in the amount of the reasonable value of the costs of removing the vehicle. Any city, borough, incorporated town or township may, by ordinance, provide for rates to be charged for removal of vehicles and for municipal regulation of authorized towing services. (amendment underlined).

As this amendment establishes a lien on the towed vehicle, the tower is authorized to retain possession until the lien is satisfied. Hence, the tower cannot be prosecuted for theft of such vehicle.

For the foregoing reasons, Order of the Superior Court at No. 977 October Term, 1976 (No. 157 January Term 1978 in this Court) affirming the Court of Common Pleas of Centre County's dismissal of Petition for Declaratory Judgment is affirmed; Order of the Superior Court at No. 978 October Term 1976 (No. 158 January Term 1978 in this Court) affirming the Court of Common Pleas of Centre County is reversed and the case is remanded to the Court of Common Pleas of Centre County for entry of judgment in favor of appellant.

EAGEN, C. J., did not participate in the consideration or decision of this case.

NIX, J., filed a Dissenting Opinion in which ROBERTS, J., joined.

NIX, Justice, dissenting.

The majority rhetorically questions the "unnecessary search for the elusive lien" and in so doing reflects its failure to grasp the single issue in this case. The Motor Vehicle Code [1] provides the owner of land on which a vehicle is illegally parked with the right to have the vehicle removed and assesses the reasonable expenses for such removal against the owner of the vehicle. Even if we accept that Natalie's Towing Service was acting as agent for the owners of the land in question and therefore entitled to the rights given to the owners of land under the Motor Vehicle Code, the question still remains as to the authority of Natalie's to withhold possession of the vehicle until the cost of removal had been paid. It is the very absence of that "elusive lien", which would have conferred the right to retain property for payment of the claim, that caused the majority of the Superior Court to properly conclude that Natalie's refusal to return the vehicle owner's car until the towing fee was paid was without legal support.

Today's majority, while implicitly conceding that no such lien exists under either the common or statutory law, attempts to change the focus to whether the vehicle owner was obligated to pay the reasonable cost of removal. This simply is not the issue that has been raised in the lawsuit. The question is not the obligation to pay but the right of the creditor to compel satisfaction by retaining possession. The majority's reasoning would appear to condone a creditor who placed a gun to the head of the debtor to secure payment as long as the debt was justly owed.

The issue was correctly analyzed and answered by the Superior Court and there was *absolutely* no reason for this

1. Act of June 17, 1976, P.L. 162, No. 81, § 1, *as amended*, Act of November 9, 1977, P.L. 226, No. 69, § 1, 75 Pa.C.S.A. § 3353.

Court to grant review.[2]  Thus a proper disposition would be an order indicating that the allowance of the appeal was improvidently granted.  At the very least the order of the Superior Court should be affirmed.

ROBERTS, J., joins in this opinion.

**2.** The Superior Court was also correct in finding that the common pleas court properly dismissed the declaratory judgment action.