478

627 A.2d 776

George HARKOVICH, Sr. and Delores Harkovich, His
Wife, and George Harkovich, Jr., Appellants,

v.

Gary PFIRRMANN, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 7, 1993.

Filed July 7, 1993.

Peter M. Suwak, Washington, for appellants.

Stanley B. Lederman, Pittsburgh, for appellee.

480

Before ROWLEY, President Judge, and JOHNSON and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The plaintiff-appellants instituted the instant replevin action seeking the return of two vehicles which had been towed more than six years earlier, at the direction of local police, and stored during that long time period by the defendant-appellee. In response to the replevin complaint, the defendant instituted a counterclaim, seeking the recovery of towing charges as well as the storage charges which had accrued during the many years he held the vehicles. Summary judgment was granted to the defendant on the plaintiffs' replevin claim. The defendant's counterclaim proceeded to a jury trial in which a verdict was rendered against the plaintiffs in the amount of $30,-988.00. Following the denial of the plaintiffs' posttrial motions, a judgment was entered in favor of the defendant on the counterclaim. This appeal followed. We shall reverse.

The instant action follows many other legal proceedings stemming from the plaintiffs' insistence that their property in Munhall, Allegheny County, included an alleyway between their property and the property of one or more neighbors. The plaintiffs used that alleyway to park two trucks, which caused their neighbors to lose access to their garages. A declaratory judgment action regarding the plaintiffs' claims to the alley property resulted in an order against the plaintiffs on April 8, 1985. Despite the ruling that the alleyway did not belong to them, the plaintiffs continued to park their vehicles there. They did not appeal from the declaratory judgment. Subsequently, after requests to the plaintiffs were unavailing, the Munhall police directed the defendant to tow the vehicles from the alleyway. There was no dispute that the plaintiffs knew the vehicles were towed and were informed that they could be reclaimed for the payment of a towing fee plus storage charges for each day the cars remained in the defendant's storage facility. The plaintiffs refused to reclaim their vehicles, and instead instituted a succession of unsuccessful legal actions in the state and federal courts to challenge the

ruling in the property action and the towing of their vehicles. The plaintiffs apparently acted *pro se* in all such proceedings, as well as during the trial in the instant case. They are represented by counsel in this appeal proceeding.

The plaintiffs have raised a number of contentions of trial error on this appeal. Included is the claim that the trial court should not have precluded the jury from considering the issue of whether the defendant should have mitigated the towing and storage charges by selling the vehicles thirty days or more after they had been towed and remained unclaimed by the plaintiffs. We find merit in that argument.

The record shows that during opening remarks to the jury, one of the plaintiffs commented that the defendant could have sold the vehicles thirty days after they had been towed, and used the proceeds to pay any accumulated towing and storage charges. When such matters were mentioned, the court stated: "I again remind the jury, they brought an Action in Replevin to get the trucks back. Just so you can see that none of this would have any bearing. Go on. In other words, you didn't want to be rid of the trucks. You tried to stop them from getting rid of them by bringing an Action in Replevin?" RR 72a. During the course of the trial, the defendant was asked questions about whether or not he could have sold the vehicles when they were unclaimed for thirty or more days after they were towed. He responded that he could not sell the vehicles while there was litigation going on which had been commenced by the plaintiffs. In so responding, he testified that the first such action was instituted by the plaintiffs more than sixty days after the vehicles were towed. He was not more specific in identifying any date. In subsequent testimony by the plaintiffs, they indicated that the first legal action they filed, subsequent to the towing, occurred in June 1986, more than a year after the trucks were towed. The plaintiffs also testified that it was their belief that the defendant had an obligation to sell the vehicles, under applicable law, in order to recover any charges arising from the towing and storage. However, at the conclusion of the case, in its charge to the jury, the trial court did not discuss the issue

of "mitigation" or comment on any right or obligation on the part of the defendant to sell the vehicles in order to recover any accrued costs. Rather, the court instructed the jury: "There is no dispute about any matter pertaining to his [the defendant's] right to receive payment in the case. Of course, I can't order you to find a verdict in favor of Mr. Pfirrmann, but I cannot see how in justice you could possibly do otherwise." RR 114a.

■  Our resolution of this appeal begins with an analysis of the applicable provisions of the Vehicle Code. The authority for the towing of the plaintiffs' vehicles from the alleyway was provided in 75 Pa.C.S.A. § 3352. *Inter alia*, it establishes authorization for the police to cause the towing or other removal of an improperly parked vehicle which may be blocking a right-of-way. It requires the police to give prior notice to the owner to afford him or her the opportunity to move the vehicle before it is towed or otherwise removed. It also states that the police must comply with Vehicle Code provisions relating to abandoned vehicles, and that if a vehicle is removed, the owner may reclaim it under procedures provided within the Vehicle Code sections dealing with abandoned vehicles. The Code provisions dealing with abandoned vehicles are set forth in 75 Pa.C.S.A. §§ 7301–7312. Section 7305 provides for notice to the owner that an abandoned vehicle has been taken into the possession of a salvor. Section 7306, which is specifically mentioned in Section 3352, declares that the owner of an abandoned vehicle may reclaim it upon payment of costs, including storage charges. Sections 7307, 7308 and 7309 provide procedures for the salvor to dispose of the vehicle, after the expiration of thirty days from the date of the Section 7305 notice to the owner. A salvor can dispose of the vehicle at auction if it has value (75 Pa.C.S.A. §§ 7307 and 7308), or treat it as junk, and receive a minimal payment from the Motor License Fund (75 Pa.C.S.A. § 7309). Thus, under all of these Vehicle Code provisions, a vehicle which police cause to be removed from a right-of-way is to be treated as

abandoned.[1] While the owner has an opportunity to reclaim it within a specified period, by paying applicable costs and charges, if the vehicle remains unclaimed by the owner, the salvor who seeks to recover any applicable towing and/or storage fees must do so by either selling the vehicle at auction or by treating it as junk.

In this case, the defendant was unquestionably a salvor. The Code gives a salvor only those limited rights regarding actions which may be taken to recover unpaid towing and/or storage charges. There is no statutory authorization to permit a salvor to maintain a legal action against the abandoned vehicle's owner for any recovery of towing and/or storage fees. The defendant certainly had no contract or quasi-contractual relationship with the plaintiffs to support his counterclaim, and the towing and storage charges he sought to recover from them. Further, he had no tort or other civil ground to support his claims. It is evident that any of the rights claimed by the defendant could only arise from statutory provisions in the Vehicle Code. Thus, it was clearly improper for the trial court to advise the jury that the plaintiffs' arguments that the defendant should have sold the vehicles were irrelevant and should not be considered in evaluating his counterclaim.

On a factual basis, the record does not support a determination by the trial court that the defendant could not have proceeded to sell the vehicles, under the applicable provisions of the Vehicle Code, because of litigation which had been instituted by the plaintiffs. The defendant testified that the plaintiffs first instituted some type of legal proceeding, more than sixty days after the trucks were towed. The plaintiffs, on the other hand, testified that they first instituted

1. In his Dissenting Opinion in this case, Judge Johnson maintains that the vehicles should not have been considered to have been abandoned. In support of that position, he relies upon two cases which are clearly inapposite. They deal with abandonment of a weapon and abandonment of real property. The reasoning and holdings in such cases have no application to the issue of whether a motor vehicle is to be treated as abandoned under the removal provisions of the Vehicle Code which are relevant in this case.

proceedings more than a year after the vehicles were towed. The trial court commented that the plaintiffs indicated an intent to reclaim the vehicles by the filing of their replevin action. However, the record shows that the instant replevin action was not instituted until December 1989, some four and a half years after the two vehicles were towed. In light of this evidence, there was no basis for the trial court to have ruled, as a matter of law, that evidence regarding the defendant salvor's legal right or obligation to sell the vehicles, thirty or more days after they were towed, was irrelevant.[2]

While in other circumstances the errors in evidentiary rulings and/or the court's charge might be the basis for an order for a new trial, such a disposition is inappropriate in this case, as it is evident that the trial court lacked any jurisdiction to issue an award on the defendant's counterclaim. The Vehicle Code only provides a salvor with *in rem* rights as to a vehicle held in storage. There is no statutory or other basis for a court to assert *in personam* jurisdiction over the owner of a towed vehicle in proceedings involving a claim by a salvor for excess towing and/or storage charges. The lack of *in personam* jurisdiction over the plaintiffs with respect to the relief sought by the defendant in his counterclaim in this case renders the judgment against the plaintiffs absolutely void and a nullity. *Scoggins v. Scoggins,* 382 Pa.Super. 507, 555 A.2d 1314 (1989); *Demetriou v. Carlin,* 47 Pa.Cmwlth. 478, 408 A.2d 565 (1979). It also precludes an award of a new trial.

The plaintiffs have displayed no common sense and have caused themselves significant harm by their obvious stubbornness and poor attempts at self-representation. While such shortcomings have operated to deny the plaintiffs the replevin rights they sought to exercise in this action, they do not justify imposing a damage verdict against them which is

2. For the same reason, there is no basis for the position advocated by Judge Johnson, in his Dissenting Opinion, that the defendant was precluded from selling the vehicles because of ongoing litigation. All of the evidence indicated no litigation was commenced by the plaintiffs during the time period when the defendant was entitled under applicable law to sell the plaintiffs' vehicles to recover unpaid towing and storage charges.

obviously improper. The law simply does not permit a salvor to keep an abandoned vehicle for many years, without respect to value, while building up almost unlimited storage charges against a vehicle owner. Obviously, the significant damage award to the defendant in this case may not be condoned on any legal ground.

The judgment in favor of the defendant is reversed, and his counterclaim is dismissed. Jurisdiction is relinquished.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I would affirm the order of the trial court, entered following the jury verdict, in favor of Gary Pfirrmann on his counterclaim against the Harkoviches. Therefore, I must respectfully dissent.

This case is the last in a series of lawsuits by the Harkoviches, all of which stem from the Harkoviches' belief that the boundary of their real property, located in Munhall, Pennsylvania, includes an alleyway bordering between their property and their neighbors' property. A declaratory judgment was entered against the Harkoviches on April 8, 1985, which held that the disputed alleyway did not belong to the Harkoviches. No appeal was taken from that declaratory judgment. The Harkoviches persisted in their belief that the alleyway was, in fact, part of their parcel of land, and pursuant to this belief, they parked their cars in the alleyway, blocking the sole access to their neighbors' garage.

The Harkoviches continued to park their cars in the alleyway despite requests from the Munhall police to move the vehicles. The police, therefore, requested Pfirrmann, who is in the business of towing and storing cars, to tow the vehicles from the alleyway. The Harkoviches, who witnessed the towing of their vehicles, were informed that they could be reclaimed for the payment of a $50.00 towing fee per vehicle plus additional storage charges for every day the cars remained in Pfirrmann's garage. The Harkoviches refused to reclaim their vehicles, choosing instead to proceed with a

series of lawsuits contesting the legality of the towing and storage of their vehicles.

The present action was instituted against Pfirrmann in replevin. Pfirrmann counterclaimed for his towing and storage charges which, by the time of the trial, had accumulated to almost $30,000. Pfirrmann moved for summary judgment on the replevin claim, which the trial court granted. Pfirrmann's counterclaim continued to a jury trial where judgment was entered against the Harkoviches for the amount of the towing and storage fees. The Harkoviches' post-trial motions were denied and this appeal ensued.

While the Majority finds the Harkoviches' first issue to be dispositive, four questions have been presented for review. The Harkoviches contend that the trial court erred in:

1. failing to admit evidence regarding an alleged duty on the part of Pfirrmann to mitigate the storage charges by selling the Harkoviches' vehicles.

2. ruling that the issue of whether the vehicles had been towed illegally was *res judicata.*

3. requesting that only one of the Harkoviches examine and cross-examine the witnesses at trial.

4. granting summary judgment against the Harkoviches on their replevin claim.

First, the Harkoviches do not contest the fact that Pfirrmann has a common-law possessory lien on their vehicles, created when he towed and stored their vehicles at police direction. *See Pittsburgh National Bank v. Schmidt*, 41 Pa.D. & C.3d 143 (1985). The Harkoviches also do not contest the fact that they knew about the towing and storage charges on the date that their vehicles were towed, but took no action to reclaim their vehicles, thus, impliedly consenting to their storage by Pfirrmann. *See Lewis v. Smith*, 2 Pa.D. & C.3d 183 (1976).

The Majority begins its discussion by asserting that the Harkoviches' vehicles were towed pursuant to the Vehicle Code, 75 Pa.C.S. § 3352. However, the Majority does not indicate which of the four subsections of § 3352 it is applying.

Majority op. at 481–483. My colleagues do state that § 3352 "establishes authorization for the police to cause the towing or removal of an improperly parked vehicle which may be blocking a right of way." *Id.* From this statement, I would assume that the Majority agrees that the Harkoviches' vehicles were towed pursuant to § 3352(c)(4), which gives the police the authority to direct the towing of any vehicle in violation of 75 Pa.C.S. § 3353. However, my colleagues then state that "[i]t requires the police to give prior notice to the owner to afford him or her the opportunity to move the vehicle before it is towed or otherwise removed." *Id.* In this statement, the Majority apparently shifts its analysis from § 3352(c)(4) to § 3352(d).

Section 3352(d) applies only to vehicles which have been abandoned on the highway and requires the police to notify the last registered owner of the vehicle of its towing. 75 Pa.C.S. § 3352(d)(3). Section 3352(d) clearly has no application in the present case. The Harkoviches' vehicles were not left unattended to be towed from a highway or other public roadway but were removed from a private driveway with the Harkoviches themselves in attendance.

The Majority also cites to an unnamed statutory section for the proposition: "[i]t also states that the police must comply with Vehicle Code provision relating to abandoned vehicles, and that if a vehicle is removed, the owner may reclaim it under procedures provided with the Vehicle Code section dealing with abandoned vehicles." Majority op. at 482. If this statement continues to refer to § 3352, then the only provision to which it could be referring is § 3352(c)(5), which provides authority for police officers to tow abandoned vehicles and also requires that police officers comply with the requirements of Chapter 73 of the Vehicle Code, relating to abandoned vehicles, at 75 Pa.C.S. § 7301 *et seq.* The Majority then assumes that the Harkoviches' vehicles were abandoned, without analysis or citation to applicable case law or statute, and proceeds to apply relevant sections under Chapter 73 of the Vehicle Code.

I must object to the Majority's attempted application of § 3352. Section § 3352(c) has five separate subsections each of which describe distinct factual circumstances under which a police officer has authority to order a vehicle to be towed. The Majority does not apply any specific subsection to the facts of this case. My colleagues then, without explanation, abruptly shift their focus to the provisions of the Vehicle Code relating to abandoned vehicles. Contrary to the Majority's assertions, I would find full authorization for Pfirrmann's towing of the vehicles under 75 Pa.C.S. §§ 3352 and 3353.

The only subsection of § 3352 which reflects the facts of the present case is § 3352(c)(4), which gives the police authority to tow any vehicle in violation of 75 Pa.C.S. § 3353. Section 3353(b) prohibits the parking of vehicles on private property without the consent of the owner. 75 Pa.C.S. § 3353(c) also gives the private property owner the right to remove the vehicle from his property at the reasonable expense of the owner. In addition, that Section also provides that the person removing the vehicle will have a lien against the vehicle's owner for the reasonable costs of removing the vehicle. 75 Pa.C.S. § 3353(c); *Apartment Owners and Managers Committee of State College Area Chamber of Commerce v. Brown,* 487 Pa. 548, 410 A.2d 747 (1980).

In the present case, the police and the private property owner from whose land the Harkoviches refused to remove their vehicle, caused the Harkoviches' automobiles to be towed by Pfirrmann. Under 75 Pa.C.S. § 3353(c), Pfirrmann thus had a statutory lien for his reasonable costs. There is ample evidence in the record to support the fact that Pfirrmann's rates were reasonable and were in fact lower than others who were in the business of towing and storing vehicles in other jurisdictions. N.T., December 11, 1991, at 34–35. The record also supports the fact that the Harkoviches knew about the towing and storage charges, and did not contest the fact that the charges must be paid in order to reclaim their vehicles. *Id.* at 36–37.

Moreover, the record clearly supports Pfirrmann's claim for storage costs for the Harkoviches' autos. Pfirrmann's testi-

mony at trial indicated that the Harkoviches' vehicles took up valuable space in his automobile pound which could have been used to store other vehicles. However, since litigation was ongoing and the Harkoviches had clearly indicated to Pfirrmann that they wanted their vehicles to be returned to them, Pfirrmann had no choice but to retain the vehicles until they were reclaimed. *Id.* at 37–38.

The Majority, however, proceeding on its unsupported assumption that the Harkoviches' vehicles had somehow been abandoned, concludes that Pfirrmann had a statutory duty to sell the Harkoviches' vehicles after sixty days in storage in order to recoup his towing and storage charges accumulated up to that date. The Majority further contends that since Pfirrmann failed to mitigate his damages through the sale of the vehicles, his damage recovery should be limited to only the amount due for the first sixty days of storage. Thus, the Majority finds merit in the Harkoviches' charge that the trial court should have admitted evidence of Pfirrmann's duty to mitigate and should have instructed the jury to limit his damage recovery. I find no merit in this argument.

Without explanation, the Majority shifts its discussion from the proper statutory analysis, under § 3352, of the procedure used by the police and Pfirrmann to remove the Harkoviches' vehicles to an analysis under Chapter 73 of the Vehicle Code, relating to abandoned vehicles. The Majority contends that under 75 Pa.C.S. § 7307, Pfirrmann had a statutory duty to sell the Harkoviches' vehicles within sixty days of the date on which the vehicles were towed. This statute reads in pertinent part:

**§ 7307. Authorization for disposal of unclaimed vehicles**

The department shall, after the expiration of 30 days from the date of notice sent by certified mail to the registered owner and all lienholders of record or 30 days after publication of notice, where applicable, and upon receipt of a written statement from the holder of the vehicle that the abandoned vehicle has not been reclaimed by the owner or lienholder within the 30–day period, authorize the disposal

of the abandoned vehicle in accordance with the provisions of this chapter.

The Majority applies this statute to the particular facts of this case without citation to authority. I find this statute to be inapplicable as it only applies to vehicles which have been "abandoned." Pfirrmann did not, and the record reveals that he could not, have considered the Harkoviches' vehicles to have been abandoned, thus negating any alleged duty to dispose of the vehicles under § 7307.

"Abandoned property is defined as that to which an owner has voluntarily relinquished all right, title, claim and possession with the intention of terminating his ownership, but without vesting it in any other person and with the intention of not reclaiming further possession or resuming ownership, possession or enjoyment." *Commonwealth v. Wetmore*, 301 Pa.Super. 370, 447 A.2d 1012 (1982). Abandonment involves an intent to abandon together with an act or omission by which such intention is carried into effect. *Quarry Office Associates v. Philadelphia Electric Co.*, 394 Pa.Super. 426, 576 A.2d 358 (1990); *Wetmore* at 373, 447 A.2d at 1014. The mere failure to claim a vehicle does not constitute abandonment nor does it divest the vehicle's owner of title. *See Elder v. Nationwide Insurance Co.*, 410 Pa.Super. 290, 599 A.2d 996 (1991).

The record, in the present case, reveals that there was communication between Pfirrmann and the Harkoviches that contradicted any inference that the Harkoviches intended to abandon their vehicles. *See, e.g.*, N.T., December 11, 1991, at 37, 41. The Harkoviches at no time indicated that they were relinquishing their rights, title or claim to the vehicles, despite the fact that they informed Pfirrmann that they would not pay the towing and storage charges but expected either their neighbors or the borough of Munhall to pay for them. *Id.* Further, Pfirrmann testified at trial that the Harkoviches instituted legal proceedings within sixty days following the towing of the vehicles. *Id.* at 37–38. As such, it would be unreasonable to expect Pfirrmann to have sold the vehicles as "abandoned" when he had notice from the Harkoviches per-

sonally and from the ongoing litigation that the Harkoviches intended to reclaim the vehicles.

The Majority also contends that the trial court lacked personal jurisdiction over the Harkoviches, and thus Pfirrmann's counterclaim must be dismissed. I disagree.

The Majority raises this issue *sua sponte* stating, that the trial court had only *in rem* jurisdiction over the Harkoviches' vehicles and no *in personam* jurisdiction over the Harkoviches, in Pfirrmann's counterclaim in this replevin action. While not cited by the Majority, I will infer that this argument is based on Pa.R.C.P. 1082(a) which states:

> (a) A claim secured by a lien on the property may be set forth as a counterclaim. No other counterclaim may be asserted.

Under 75 Pa.C.S. § 3353, Pfirrmann has a statutory lien on the Harkoviches' vehicles. *See Apartment Owners and Managers Committee of State College Area Chamber of Commerce, supra.* Additionally, since the Harkoviches at no time tried to reclaim their vehicles while at the same time continuing to assert their rights to the vehicles, this can be inferred as tacit agreement to Pfirrmann's storage of the vehicles pending the outcome of the various legal proceedings in which the Harkoviches were involved. *See Lewis v. Smith, supra.*

In this case, Pfirrmann has asserted a proper counterclaim in the form of a possessory lien on the Harkoviches' vehicles. I agree, however, that under Rule 1082, even Pfirrmann's proper claim in quasi-contract or *quantum meruit* for charges in excess of the value of the vehicles might at first appear improper.

This issue was addressed by this Court in *Donegal Mutual Insurance Co. v. Miller,* 277 Pa.Super. 186, 419 A.2d 724 (1980). In that case, the Court affirmed the grant of Summary Judgment for the plaintiff where the defendant asserted a counterclaim in *quantum meruit* in a replevin action. *Id.* There, we stated that the proper defense to such counterclaim was a motion under Pa.R.C.P. 1032(1) for the failure to state a

claim upon which relief can be granted. *Id.* at 190, 419 A.2d at 726. While, in *Donegal Mutual Insurance Co. v. Miller,* we stated that a motion under Rule 1032(1) may be raised at any stage in the proceedings and is not waived if not raised at preliminary objections, the clear implication to be drawn from that case is that such a motion must be raised by a party at *some point* in the proceedings. *Id.* at 191–192, 419 A.2d at 727. In the case before us, the issue of an improper counterclaim was never raised by the Harkoviches.

In *Luitweiler v. Northchester Corporation,* 456 Pa. 530, 319 A.2d 899 (1974), our supreme court discussed whether a court may *sua sponte* address the issue of whether one party has failed to state a claim upon which relief can be granted, as the Majority does in the case *sub judice.* There, our supreme court stated that, "[a]lthough our rules do allow certain matters to be raised by the court on its own motion, a failure to state a cause of action is not one of them." *Id.* at 533 n. 5, 319 A.2d at 901 n. 5. It would appear from the holding of *Luitweiler,* that any discussion of the propriety of the Pfirrmann's counterclaim, absent a motion by the Harkoviches, is entirely improper.

To support its contention that Pfirrmann's claim must be dismissed, the Majority cites to two cases which articulate the well-recognized procedure by which an individual must support a claim regarding the personal jurisdiction of the court. *See Scoggins v. Scoggins,* 382 Pa.Super. 507, 555 A.2d 1314 (1989); *Demetriou v. Carlin,* 47 Pa.Cmwlth. 478, 408 A.2d 565 (1979). In *Scoggins* we articulated the method of challenging the court's personal jurisdiction as:

> When a defendant wishes to challenge the court's exercise of *in personam* jurisdiction, he may do so by filing preliminary objections. As the moving party, the defendant, has the burden of *supporting* its objections to the court's jurisdiction.
>
> Once the plaintiff has produced some evidence to support jurisdiction, the defendant must come forward with some evidence of his own to dispel or rebut the plaintiff's evidence. The moving party may not sit back and, by the bare

allegations as set forth in the preliminary objections, place the burden upon the plaintiff to negate those allegations. Only when the moving party has properly raised the jurisdictional issue does the burden fall upon the party asserting [jurisdiction].

*Scoggins* at 513–514, 555 A.2d at 1318 (citations omitted) (emphasis as in original).

The Commonwealth Court, in *Demetriou, supra,* also addressed the burden upon a party asserting the court's lack of personal jurisdiction. There, the court stated:

Within traditional concepts of *'in personam'* jurisdiction and the want for legal efficacy of judgments rendered absent such jurisdiction, a named party to a cause of action may subject himself to the jurisdiction of the court. By doing so he thereby waives any *in personam* jurisdictional disability.

*Demetriou* at 483, 408 A.2d at 568 (emphasis added).

The Harkoviches have made no claim regarding the court's personal jurisdiction over them in the present counterclaim action. In fact, it is the Harkoviches who first claimed the jurisdiction of the court by filing a complaint in replevin. In light of the above standards for asserting a claim for lack of personal jurisdiction, this Court must view such a claim, had it been raised on appeal by the Harkoviches, to have been waived.

Returning to the actual claim made by the Harkoviches, as I find no duty on Pfirrmann's part to have sold the Harkoviches' vehicles, I would find no error on the part of the trial court in refusing to admit evidence as to mitigation of damages or to instruct the jury in that regard. I would thus address all of the issues which the Harkoviches bring before this court on appeal.

Second, the Harkoviches contend that the trial court erred in its ruling that the question of the legality of the towing of the vehicles was *res judicata.* I am unable to agree with that contention.

The Harkoviches claim that the trial court's ruling that the question of the legality of the towing was *res judicata* was

based on the motion for summary judgment granted in the present litigation. The Harkoviches correctly assert that there must be a disposition on the merits of a claim before that claim can be rendered *res judicata,* and that the grant of the motion for summary judgment was based not on the merits of the claim but on the running of the statute of limitations. Here, however, the trial court based its ruling not on the grant of the motion for summary judgment in the present litigation but on the ruling of Judge Gerald J. Weber on this issue in the United States District Court for the Western District of Pennsylvania at CA 86–434, which held that Pfirrmann's towing of the vehicles was legal. This holding was affirmed by the Third Circuit Court of Appeals on August 12, 1987, at 87–3247. The trial court also cited to previous rulings in the Allegheny County Court of Common Pleas, each of which held that this claim had been previously and finally litigated in Federal District Court.

I conclude that there was no error by the trial court in ruling that the Harkoviches could not offer the illegality of the towing of their vehicles as a defense to Pfirrmann's counterclaim. I would hasten to note, however, that due to the *pro se* nature of the proceedings by the Harkoviches at trial, these allegations regarding the legality of the towing were nonetheless presented to the jury over the objection of counsel for Pfirrmann, and despite the best efforts on the part of the trial court to control the disruptive nature of the proceedings by the Harkoviches. Therefore, we dismiss these allegations as meritless.

Third, the Harkoviches maintain that the trial court erred in requesting that only one of the members of the Harkovich family be chosen to question witnesses during the trial. I would find no merit in this argument.

In this case, the Harkoviches chose not to be represented by counsel but to proceed *pro se.* The fact that the parties chose to act as their own counsel did not exempt them from the Pennsylvania Rules of Civil Procedure. Under Pa.R.C.P. 223(a)(2), where there are multiple plaintiffs or defendants, the court is empowered to require that those parties choose

one attorney to question witnesses on behalf of all parties on one side of the litigation. *Northampton Bucks County Municipal Authority v. Bucks County Water and Sewer Authority*, 96 Pa.Cmwlth. 514, 508 A.2d 605 (1986), *appeal denied*, 514 Pa. 633, 522 A.2d 560 (1987). I find no error in the trial court's attempt to impose this requirement upon the parties in this case. I would note that due to the disruptive nature of the Harkoviches' conduct during this jury trial, it was reasonable and appropriate for the trial court to attempt to impose this requirement upon the parties in its attempt to conduct an orderly trial.

Fourth, the Harkoviches contend that the trial court erred in granting summary judgment on their replevin claim against Pfirrmann. I emphatically disagree.

The Harkoviches filed their replevin action on December 13, 1989. Pfirrmann filed his Motion for Summary Judgment on May 21, 1990, which Judge Zeleznik granted on June 13, 1990. The Harkoviches never appealed from the grant of summary judgment, which dismissed all aspects of their claim against Pfirrmann. The jury trial was held before Judge Frederick G. Weir only on the issues raised in Pfirrmann's counterclaim. It is only the judgment rendered on the Pfirrmann's counterclaim that is before this Court on appeal.

The grant of the motion for summary judgment against the Harkoviches was a final appealable order. *See, e.g., French v. United Parcel Service*, 377 Pa.Super. 366, 547 A.2d 411 (1988). A final order is defined under the Pennsylvania Rules of Appellate Procedure as:

**Rule 341. Final Orders; Generally**

**(b) Definition of Final Order.** A final order is any order that:

(1) disposes of all claims or of all parties; . . .

Our supreme court has also defined when an order becomes final and, thus, appealable in *Sweener v. First Baptist Church of Emporium*, 516 Pa. 534, 539, 533 A.2d 998, 1000 (1987), stating:

496

A pivotal consideration in determining whether an order is final and appealable is whether the plaintiff aggrieved by it has, for purposes of the particular action, been put "out of court" on all theories of recovery asserted against a given defendant for a given loss.

Here, summary judgment was entered as to all aspects of the Harkoviches' replevin action on June 12, 1990, thus precluding any further litigation of that claim. The Harkoviches had thirty days in which to appeal the entry of that order. Pa.R.A.P. 903(a). No such appeal was taken. As such, this Court is without jurisdiction to entertain such an appeal at this time, almost three years past the expiration of the appeal period.

Accordingly, as I would find no merit in the Harkoviches' claims, I would affirm the order of the trial court in its entirety. I must, therefore, respectfully dissent.